IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DENNIS JOHN TIMS,

                              Plaintiff,                              OPINION AND ORDER

        v.                                                                  19-cv-508-wmc

CAPT. TODD TESSEMAN,
NURSE LINDA KLOVAS and
DAVE FIELDS,

                        Defendants.

        While detained at the Clark County Jail in January of 2019, *pro se* plaintiff John

Tims broke one of his molars, which he claims left a jagged edge, became infected, and

caused him to experience severe pain, eventually spreading throughout his face and into

his jaw.  Tims subsequently filed this lawsuit, claiming that certain jail staff violated his

constitutional and state-law rights by refusing his repeated requests to be seen by a dentist.

At initial screening, the court granted him leave to proceed on Fourteenth Amendment

claims against Clark County Captain Todd Tesseman, Nurse Lynn Klovas and Physician's

Assistant Dave Fields, all of whom were involved in responding to his pain complaints.

Defendants Tesseman and Klovas are represented together; Fields is represented

separately.  Now before the court are the parties cross-motions for summary judgment.

(Dkt. ##113, 120, 154.)

        At the outset, the court needs to address Tims' apparent attempts at summary

judgment to broaden his claims in this lawsuit.  Specifically, in Tims' own, 93-page brief

in support of his motion for summary judgment, he includes assertions of retaliation

against Tesseman, argues that he is the target of a conspiracy to violate his rights, and

includes discussions of aspects of his underlying, state-court criminal proceeding.  (*See* dkt. # 114, at 32-33, 77-80, 90-93.)   In denying Tims' efforts to collect discovery from defendants related to such matters, Magistrate Judge Crocker reminded Tims that his claims in this lawsuit relate *only* to the medical care he needed and allegedly did not receive in 2019.  (*See* dkt. #100 at 4.)   Moreover, since being granted leave to proceed on these claims, Tims has not sought leave to reconsider or amend his complaint to include any new claims or defendants.  In this opinion, therefore, the court will address only the events that took place at the Clark County Jail between January and June of 2019 that is the subject of this lawsuit, and summarily denies Tims any of the unrelated relief arising of his assertions of retaliation and conspiracy.  The court will also deny as moot Tims' motion to enlarge page limits and word count (dkt. #118) because the court does not have page limits.

Still, for reasons explained more fully below, including the undisputed evidence of record before it at summary judgment, the court is left to conclude that a reasonable jury could find defendants Klovas and Fields responded in an objectively unreasonable manner after learning about Tims' broken molar, infection and associated pain.  However, the same cannot be said as to defendant Tesseman, who was entitled to defer to Klovas and Fields as medical professionals.  Moreover, Tims has not shown that he is entitled to summary judgment in his favor as to any of the defendants.  Therefore, the court will grant summary judgment in favor of Tesseman, deny it as to Klovas and Fields, and deny Tims' motion for summary judgment.   Accordingly, Tims' Fourteenth Amendment claims against defendants Klovas and Fields will proceed to trial, albeit on a new schedule in light of Tims'

recent requests for a continuance due to issues at his institution creating a barrier to him preparing for trial.  (*See* dkt. #208.)

UNDISPUTED FACTS[1]

Plaintiff John Tims was a pretrial detainee at the Clark County Jail from September 2017 until July 2019, when he was sentenced in state court.  He was transferred out of the jail in August of 2019.  Defendant Linda Klovas is a registered nurse, who worked in that capacity at the jail while Tims was a pretrial detainee.  Defendant Fields is a licensed Physician's Assistant who provided contracted, weekly sick call services at the jail during the relevant time.  Defendant Todd Tesseman has been a Captain at the jail since 2018.

Within days of his booking at the jail in 2017, Tims learned that he could submit requests for medical care using the jail's electronic kiosk system.  Jail inmates were also directed to use the electronic kiosk system to submit grievances, request supplies and raise other questions and concerns.

On January 3, 2019, Tims' lower left molar broke, prompting him to submit an electronic report that one of his molars had broken while he was eating, requesting care as soon as possible. (Dkt. #19)  The next day, Nurse Klovas examined Tims, noting that the tooth was sharp, but that Tims reported it did not hurt.  Klovas provided dental wax to protect the tooth and mouth.[2]  Although Tims wanted to see a dentist, Klovas did not

---

[1]  Unless otherwise indicated, the following facts are material and undisputed.  The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying record evidence as appropriate.

[2]  Tims also represents that Klovas directed him "to keep air off of it," but provides no evidentiary this statement.  Given his *pro se* status, however, the court will assume that Tims would so testify

3

believe a referral to dental care was necessary.  However, she did update Tims' health assessment at the jail by noting Tims' broken molar.

The parties dispute whether and when Tims next brought up issues related to his molar.  A few days, later on January 9, 2019, the jail's records show that Tims spoke with a counselor at the jail and brought up "medical issues," but not that he specifically raised concerns about his broken molar nor that any information was relayed to Nurse Klovas about his molar.  Next, on March 25, Nurse Klovas also took Tims' weight and measured his blood pressure, but at least according to Klovas, Tims did not bring up dental issues during that interaction.  Tims not only disputes this, but maintains that he asked Klovas for an update as to when he would see a dentist.  (*See* Tims Decl. (dkt. #176) ¶ 8.)  Next, the records show that Klovas took his blood pressure again on April 9 and reminded him to take his blood pressure medication.  Klovas also attests that Tims did not bring up any dental issues during this second interaction either, which Tims again disputes, representing that he once more asked for an update as to whether he would see a dentist.

Moreover, Tims asserts that he had interactions with Klovas on certain evenings between January and June of 2019, when he asked about his dental care.  While Tims is uncertain of the number of times he asked Klovas about dental care, and cannot remember how she responded to his inquiries, he recalls asking if there was any word on whether he would be seeing a dentist.  (*See* Tims Dep. (dkt. #149) 38, 42-43.)  Klovas believes that any such interactions with Tims would have been during evening medication passes, but

---

at trial.  *Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017) ("To be considered on summary judgment, evidence must be admissible at trial, though the form produced at summary judgment need not be admissible.").

represents that she did not administer the medications.     Instead, jail officers were responsible for passing out the medications.  Although Tims recalls talking to the jail officers about his tooth, he did not ask the officers for medical or dental care.

Even so, the parties agree that Tims chose not to submit any medical requests through the jail's kiosk system regarding an ongoing dental issue between January 4 and May of 2019, and that no jail officers relayed complaints about dental issues to Nurse Klovas during that time frame.  On June 1, 2019, Tims first submitted a medical inquiry through the electronic kiosk system, stating that he "saw the nurse months ago about [his] broken molar [and] over the past week the pain has become intense."  (Klovas Decl. (dkt. #156) ¶ 20.)  Tims testified in his deposition that he submitted this inquiry because at the end of April he started to feel discomfort in his tooth, and the discomfort worsened over time.

In response, Nurse Klovas examined Tims on June 3rd, noting his complaint of pain on the left side of his face and into his ear.  Klovas also noted that he had received some Orasol gel the night before, which made the pain worse.  Klovas advised Tims to take ibuprofen and scheduled him to see Physician Assistant Fields the next day.  That same afternoon, Tims filed a grievance through the kiosk system to Captain Tesseman, reporting pain from a broken tooth that had lasted six months and demanding oral surgery.

The next day, June 4, Tims submitted another medical inquiry through the kiosk system, writing that the ibuprofen was not alleviating the pain and asking to have his tooth fixed.  Nurse Klovas updated Tims' medical progress notes that same day, writing that: Tims' dental pain had worsened; he had no fever or facial swelling; the ibuprofen was not

5

working; and he was being treated for a possible infection. (*See* dkt. #190-24.) Klovas also responded to Tims that he was scheduled to see PA Fields. This was consistent with Klovas's general practice of referring inmates with dental issues to either PA Fields or to dentists when she believed that dental care was needed or if Fields recommended dental care. However, the jail has standing orders for toothaches and dental issues, requiring initial evaluation and non-emergent care to issue pain medication, ice or hot packs, gel as needed and salt-water rinses as needed.

Also on June 4, Physician Assistant Fields examined Tims for his dental pain, during which Klovas was present. During his examination, Fields noted: Tims' pain complaint and tenderness in the root of the molar; no facial swelling, fever, tenderness or radiculopathy; no exposed nerve; and a possible infection. Tims also recalls reporting a large void in his mouth and sharpness on his tooth. Fields prescribed naproxen, a pain medication, and amoxicillin, an antibiotic, and advised Tims to follow up if necessary. Fields placed the orders for those medications that same day.

Although Fields cannot recall whether Tims asked for an outside dental referral during his June 4 examination, Tims maintains that Fields stated he could not send him to a dentist because the county could not afford it. For his part, however, Fields states that he would not have made a medical decision based on the fiscal matters of the jail. Fields also states that he recalls Tims smirking at him and Klovas, then commenting that he would be filing a lawsuit against them.

After that appointment, Tims submitted a medical inquiry to Klovas, memorializing that Fields said Tims would not be treated by a dentist because the county could not afford

it, and stating that the pain from his tooth was "severe."  Klovas responded later on June 4, advising Tims to ask for more ibuprofen until the antibiotic and naproxen arrived that night.  However, Klovas did not believe that further dental care was necessary at that time, based on her own evaluation of Tims, as well as Fields' evaluation and orders.

Tims did not make any verbal or written complaints to Klovas about dental pain or issues after June 4, although he did submit a statement to the Clark County Sheriff's Office on June 4, claiming that he was denied dental treatment because the county could not afford it.  That afternoon, Tesseman responded in writing to Tims' grievance and statement, indicating that he had spoken with Fields and Klovas, who "advised that your tooth does not require emergency medical attention and that you have been seen regarding your tooth pain and have also been treated."  (Tesseman Decl. (dkt. #155) ¶ 11.) Tesseman further wrote:  "Please follow medicals advise for treating your tooth pain and advise them if your condition changes."  (*Id.*).

About an hour after Tesseman responded to Tims, he submitted another grievance using the kiosk system, this time stating that:  he was being denied dental care; he was suffering from an exposed nerve in his mouth; he was experiencing pain and trouble eating, sleeping and drinking; and he needed dental care.  On June 6, Tesseman responded to that grievance, noting that:  the doctor (presumably referring to Physician Assistant Fields) did not consider his tooth an emergency; Tims was prescribed medication; and he was advised to follow the jail doctor's advice.  Tims submitted another grievance that afternoon, claiming that his housing was being changed at the jail in retaliation for requesting dental care.  Tesseman responded that Tims had been moved due to an update to the jail's

cameras, and that his dental problem had been addressed by medical staff.

Tesseman further attests that he relied on the jail's medical professionals to evaluate inmate needs and to recommend care, and that after he reviewed Tims' grievances and consulted with jail medical staff,[3] he believed Tims was receiving adequate medical care for his dental issue.  Tims did not file any subsequent grievances or requests for medical care at the jail.

Tims began a seven-day course of amoxicillin the evening of June 4, and he completed the course on the morning of June 11.  Tims started a seven-day course of naproxen on the morning of June 5, and he completed that course the evening of June 11.  On June 21, Nurse Klovas examined Tims, and she maintains that he did not make any dental complaints.  Although Tesseman conferred with Klovas and Fields about Tims, the three of them did not have a formal meeting during which they agreed to deny Tims further dental treatment.

Tims was never x-rayed or seen by a dentist at the jail, and on August 8, he was transferred to Dodge Correctional Institution.[4]  Klovas filled out a transfer summary form,

---

[3] Tims disputes that Tesseman conferred with medical staff because, in a discovery response, Fields denied communicating both verbally *and* in writing to Tesseman about his diagnosis.  Even accepting Fields' denial, however, Tesseman did not state that he conferred with Klovas and Fields both in writing and verbally about the diagnosis; he said that he consulted with jail staff about the care Tims received.  So, it is undisputed for summary judgment purposes that Tesseman conferred with Klovas and Fields about the medical care Tims received.

[4] Tims includes numerous proposed findings of fact related to his attempt to gather discovery from defendants, including video footage of an incident that occurred on June 6, 2019.  (*See* Pl. PFOF (dkt. #115) ¶¶ 33, 34, 36.)  However, Tims has not explained how this information is material to his claims in this lawsuit, except perhaps to his claim of Tesseman's alleged retaliation.  Again, Tims is not proceeding against Tesseman on a retaliation claim in this lawsuit, so those proposed findings of fact are immaterial.

writing that Tims became angry with the jail's medical provider on June 4, wanted to see the dentist for his cracked tooth, and was prescribed naproxen and an antibiotic.  She also noted that Tims had made no further complaints.  On August 9, while Tims was temporarily located at Waupun Correctional Institution, Tims filled out a mental health screening form.  Although Tims described medical issues, he did not mention a dental issue.  Tims later did submit a request for dental care at Dodge Correctional Institution, which led to his tooth extraction on October 21, 2019.

Tims' medical records from the tooth extraction include notes that Tims had "longstanding pain and swelling" from his period at the jail, and that he had an abscessed tooth.  (*See* dkt. #190-16.)  Tims attests to continued pain, which he attributes to the delay experienced in receiving dental care.

## OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The parties each seek summary judgment in their favor on the merits, and Tesseman and Klovas raise qualified immunity as a further defense.

## I.     Fourteenth Amendment

The parties agree that Tims was a pretrial detainee at the jail during the relevant time, which means that his claims are governed by the Due Process Clause of the Fourteenth Amendment.  *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017).  A jail official violates the Fourteenth Amendment if:   (1) the official acted purposefully, knowingly or recklessly when the official considered the consequences of his or her actions; and (2) the official's actions were objectively unreasonable.  *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. Cnty of Lake*, 900 F.3d 335, 350-53 (7th Cir. 2018).  As to the first element in particular, "if the defendants 'were aware' that their actions would be harmful, then they acted 'purposefully' or 'knowingly'; if they were not necessarily 'aware' but nevertheless 'strongly suspected' that their actions would lead to harmful results, then they acted 'recklessly.'"  *Pittman by & through Hamilton v. Cnty. of Madison, Illinois*, 970 F.3d 823, 828 (7th Cir. 2020).  Under the second element, the court must consider "the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively – without regard to any subject belief held by the individual – whether the response was reasonable."  *McCann*, 909 F.3d at 886.

### A.  Physician Assistant Fields

Fields contends that he is entitled to summary judgment because he responded to Tims' dental issue reasonably, and because Tims has not come forward with expert evidence suggesting that a dental referral was necessary in June of 2019.  Tims maintains in opposition that Fields declined to refer him to a dentist not because Fields did not

10

believe a referral was warranted but because the county could not afford to pay for that service.   And his deposition testimony goes further, with Tims' assertion that his interaction with Physician Assistant Field:

> was more of a sham.  You know, he looked at it, and I think he had – I want to say it was a tongue depressor that he used.  He looked in my mouth and he said, yeah, it's broke, yeah, it's infected, you know, and then he said, you're not going to see a dentist . . . . .  And then he came up with the excuses that, well, Clark County doesn't have the money.  Clark County will go broke, can't afford it.

(Tims Dep. (dkt. #149) 93-94.)

Fields disputes making that comment to Tims and further attests that the county's fiscal concerns do not drive his treatment decisions.  Fields also points out that Tims threatened to file a lawsuit against him during their conversation.  Thus, there is a genuine dispute as to what was discussed during Tims' interaction with Fields.

Alternatively, Fields suggests that this factual dispute is immaterial because his treatment decision was appropriate.   Specifically, he points to the record of their interaction that shows Tims did not present with facial pain, swelling, a fever or tenderness, and no tooth decay or any other symptoms indicating an intervention beyond antibiotics and a pain reliever was appropriate.  Still, this ignores Tims contrary representations as to the length and severity of his pain symptoms he reported to Fields and his failure to make a recommendation for a referral to a dentist.  Expert testimony may be helpful here.  But the nature of the injury here and resulting symptoms are sufficient for a lay jury to assess whether under all the circumstances, the decision not to refer Tims' broken molar for review by a dentist amounted to deliberate indifference to his ongoing pain, particularly if

11

a jury were to believe Fields denied Tims access to a dentist because of costs to Clark County, rather than a legitimate medical reason. *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (including among the circumstances in which a jury can infer deliberate indifference when a health care provider refuses care because of cost) (citations omitted).

Indeed, under the more demanding Eighth Amendment standard, an "[i]nexplicable delay" that exacerbates a prisoner's medical condition or unnecessarily prolongs suffering can show deliberate indifference." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007)). "[E]ven brief, unexplained delays in treatment may constitute deliberate indifference," *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citation omitted), and "the length of delay that is tolerable depends on the seriousness of the conditions and the ease of providing treatment," *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Here, there is no dispute that Tims had a long-standing issue with his broken molar, and if his version is credited, reason to fault Fields for Tims' continued issues with his molar.

Certainly, the record does not conclusively establish that Fields' failure to refer Tims to a dentist in June of 2019 caused the abscess and rupture, nor that Tims' broken molar presented an emergency. Indeed, Fields points out that Tims did not raise any further concerns about dental care or pain associated with his tooth after he filed his grievances on June 6. Although that is a reason to credit Fields' decision-making and discredit Tims, Tims was not required to complain continually about wanting to see a dentist, and he may have reasonably felt any further complaints would be futile given how jail staff responded to his claimed, repeated requests to see a dentist. Regardless, Tims maintains that he

experienced prolonged pain and that his condition worsened because Fields did not send him to a dentist in June.  If a jury were to believe Tims, it could reasonably conclude not only that Fields was aware that Tims might continue to experience pain and another infection without intervention by a dentist, but further that declining to refer him to a dentist was unreasonable because he did it out of cost concerns.  *See McCann*, 909 F.3d at 886.

For these reasons, the cases Fields cites in support of summary judgment in his favor are factually distinguishable.  In *Lamb v. Advanced Corr. Healthcare, Inc.*, No. 17-C-383, 2018 WL 3150227 (E.D. Wis. June 27, 2018), the court granted summary judgment on claims against a nurse, nurse practitioner and doctor, who prescribed pain medication and then an antibiotic for a possible infection, and only allowed to see a dentist after he threatened legal action.  *Id.* at *4.  Under the Eighth Amendment, the court reasoned that the interventions provided by the nurse and nurse practitioner, and doctor, were adequate despite none of them referring him to a dentist immediately, noting that those providers addressed the pain symptoms and infection, *and* the doctor had noted some improvement.  *Id.* at *4-5.  In *Shunick v. Glossip*, No. 19-4229, 2022 WL 902653 (C.D. Ill. Mar. 3, 2022), a nurse noted dental pain, but did not refer the detainee to a dentist for two days, and a nurse practitioner prescribed pain relievers and an antibiotic during the first interaction with the plaintiff complaining of tooth pain.  *Id.* at *7-10.  The court granted summary judgment for the nurse practitioner and nurse because the interventions appropriately addressed the pain complaints and during the two-day delay plaintiff was in constant contact with the medical staff at the jail about other medical issue, and he was receiving

13

pain medication and antibiotics in the meantime. *Id.* Finally, in *Berta v. Arredall*, No. 17-cv-77, 2019 WL 2552258 (S.D. Ill. May 15, 2019), jail medical staff provided a detainee antibiotics and pain medication, but the detainee did not see a dentist for almost another two months, despite persistent complaints of dental pain. *Id.* at *1-2. The magistrate judge issued a report and recommendation to grant defendants' motion for summary judgment, reasoning that jail staff had scheduled the plaintiff to see a dentist, who determined that the detainee's need for an extraction of his wisdom teeth was not an emergency. *Id.* at *5.

If the court sets aside Tims version of his interaction with Fields, these cases would be persuasive. However, in none of those cases was the defendants alleged to have known about a broken molar for half a year nor told the detainee that a dental referral was not possible because of costs. Although Fields' description of his interaction with Tims, as well as his reason for not referring him to a dentist, both certainly suggest that he exercised appropriate judgment, to grant summary judgment in Fields' favor would require the court to credit his version of their interaction, which is inappropriate at this stage. Due to the factual disputes regarding their interaction, therefore, Tims' claim against Fields must proceed to trial.

**B. Nurse Klovas**

Klovas seeks summary judgment on the ground that she responded appropriately to Tims' complaints about his tooth. In opposition Tims insists that he repeatedly asked Klovas about whether he would be seeing a dentist between January and June of 2019, and

that she failed to refer him to a dentist or the jail medical provider during that time. Based on the evidence of record, neither Klovas nor Tims is entitled to summary judgment.

To start, Klovas was aware that Tims had a broken molar in January of 2019, at which point the only intervention she provided was dental wax. Although the record does not show the size of the break, there is no dispute that Tims' broken tooth was sharp and that he wanted to have it fixed. Yet Klovas does not explain in detail why she did not refer Tims to a medical provider or dentist at that point. She attests that she did not believe further intervention was necessary at that point because the wax was sufficient to protect his mouth. And although Tims was not reporting pain in January, Tims was asking that his tooth be fixed. Klovas offers no medical reason as to why she did not refer him to a medical provider or dentist to assess whether or when to repair his broken molar. Nor does she attest that it is typical in her experience for health care professionals to deny a request for a dental referral for this type of dental issue. This is a problem because a broken, sharp molar poses a dental issue that a reasonable jury could find would be obvious to a nurse, or even a lay person. This is not to say that a jury *must* find as much, at least on the record before the court now, which unfortunately is unclear regarding the actual condition of the molar when first presented to Klovas. The real problem is that if the jury credits Tims' continued pain complaints, it could reasonably find that Klovas responded unreasonably to his need for treatment.

In addition, Tims says that when he interacted with Klovas after January, he asked her multiple times about whether he would be seeing a dentist. Klovas does not remember Tims asking her about the dentist, and there is no dispute that Tims did not follow the

jail's procedures regarding medical inquiries. But Tims' failure to follow that procedure does not mean that he did not need to see a dentist or that he did not follow up with Klovas about when he would see a dentist. And there is no dispute that Klovas did not ask the jail's medical provider about whether Tims should see a dentist or make the referral herself, both of which were within her authority. If a jury were to believe Tims' version of his interactions with Klovas, it could infer that Klovas was aware not only of Tims' broken molar but also that he wanted to have it fixed, purposefully did not follow up, and that her failure to escalate Tims' issue was unreasonable.

That said, Klovas responded appropriately to Tims' June 2019 medical inquiry. At that point she referred Tims to Fields, who met with Tims the next day. Although Tims challenges the reasonableness of Fields' decision to limit the interventions to naproxen and amoxicillin, Klovas was not obliged to intervene or override Fields' decision at that point. Rather, as a nurse she was entitled to defer to Fields' professional judgment as a physician's assistant unless it was obvious to her that Fields was mishandling Tims' need for medical attention. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on a doctor's instruction unless it is obvious that the doctor's advice will harm the prisoner); *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (a nurse's "deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient"). Fields provided some care, treating the suspected infection and Tims' pain, and the record suggests that those interventions addressed the most immediate need for treatment. No evidence of record suggests that Klovas had an obvious reason to question Fields' decision not to refer him to a dentist at

16

that point.  Therefore, Tims' claim against Klovas will be limited to his interactions between January and June when she referred Tims to Fields and deferred to his medical judgment.  Accordingly, neither Klovas nor Tims is entitled to summary judgment on the merits of this claim.

Those same factual disputes doom Klovas's qualified immunity argument on this record as well.  Indeed, courts cannot grant summary judgment on qualified immunity grounds where "determining whether [the defendant's] violation of [the plaintiff's] rights was clearly established . . . requires findings of fact."  *Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021).  Because there are factual disputes regarding whether Klovas responded unreasonably to Tims need for further dental treatment, this claim must proceed to trial.

## C. **Tesseman**

Finally, Tesseman argues that he is entitled to summary judgment because he was not involved in Tims' medical care and, as a correctional officer, he was entitled to defer to Fields' and Klovas's judgment.  To be held liable for a constitutional violation under § 1983, a defendant must have been personally involved in the constitutional violation.  *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).  Although Tesseman was not responsible for denying Tims' request to see a dentist, Tesseman handled Tims' grievance, in which Tims was complaining about Fields' decision.  Tims' stated need for dental care was ongoing, so Tesseman arguably could have intervened at that point by resolving the grievance in Tims' favor and ensuring that he received dental care.  Although Tesseman is

not entitled to summary judgment for lack of personal involvement, he is entitled to summary judgment because his response was reasonable.

Because Tesseman is a captain at the jail, not a medical professional, he was entitled to defer to Klovas's and Fields' decisions regarding Tims' dental care, if he did not ignore Tims' complaints or it was obvious that the treatment approach would worsen Tims' condition. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *see also Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) ("If a prisoner is writhing in agony, the guard cannot ignore him on the ground of not being a doctor; he has to make an effort to find a doctor, or . . . some medical professional."). Tesseman did not simply ignore Tims' complaint. He investigated the allegations Tims raised in his grievance by following up with medical staff and learning that, although Tims wanted to see a dentist, in Fields' and Klovas's professional opinions, Tims did not require a dental referral. Tesseman was also aware that Tims received naproxen and amoxicillin to address the suspected infection. No evidence suggests that Tesseman had reason to question the decision to limit the medical interventions to pain relief and antibiotics, and Tesseman did not ignore any subsequent pain complaints Tims raised.

Tims' arguments in opposition do not suggest that Tesseman was involved in his medical care or in a position to question the decision not to refer him to a dentist. Instead, Tims raises arguments that Tesseman was "vindictive" and retaliated against him by moving him to an undesirable pod. Again, Tims is not proceeding against Tesseman on a retaliation claim; his claim is limited to the allegation that Tesseman refused to allow him to see a dentist. There is no dispute that Tesseman did not deny Tims' request to see a

18

dentist and had no basis to question the Klovas's or Fields' medical judgment. Accordingly, Tesseman is entitled to summary judgment in his favor, and the court will dismiss him from this lawsuit.

## II.    Trial Schedule

Over the past week Tims has submitted several filings, both through his institution's e-filing system and through the mail. Some of these documents show his diligent efforts to prepare and file his pretrial materials, but in others Tims represents that he cannot adequately prepare for trial because his institution is on lockdown, meaning he has no access to the law library and there are limits on his access to other legal resources. The court will extend the pretrial submission deadlines by another week and set this case for a Zoom status conference, during which the court will discuss Tims' readiness to proceed to trial on June 12.

## ORDER

IT IS ORDERED that:

1. Defendants Klovas and Tesseman's motion for summary judgment (dkt. #154) is GRANTED as to Tesseman and DENIED as to Klovas, as limited above.

2. Tesseman is DISMISSED from this lawsuit. At the close of this case, the clerk of court is directed to enter judgment in Tesseman's favor.

3. Defendant Fields' motion for summary judgment (dkt. #120) is DENIED.

4. Plaintiff Dennis Tims' motion for summary judgment (dkt. #113) is DENIED.

5. Plaintiff's motion to enlarge page limits and word count (dkt. #118) is DENIED.

6. The remaining trial deadlines are extended as follows:  submissions for the Final Pretrial Conference are due May 22, 2023, and responses are due May 29, 2023.

7. The court will hold a Zoom status conference on **Wednesday May 17, at 11:00 a.m.**

Entered this 12th day of May, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

20